IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PATSY LYN LEGAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-17-47-STE |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

I.     **PROCEDURAL BACKGROUND**

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 17-31). The Appeals Council denied Plaintiff's

request for review. (TR. 4-6). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 25, 2013, the alleged disability onset date. (TR. 19). At step two, the ALJ determined Ms. Legan had the following severe impairments: degenerative disk disease, schizoaffective disorder, generalized anxiety disorder, post-traumatic stress disorder (PTSD), and panic disorder without agoraphobia. (TR. 19). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 20).

At step four, the ALJ concluded that Ms. Legan retained the residual functional capacity (RFC) to:

> [P]erform a reduced range of light work as defined in 20 CFR 404.1567(b). Specifically, the claimant can lift, carry, push or pull 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk 6 hours in an 8 hour work day and sit 6 hours in an 8 hour work day. She can understand, remember and carry out simple and some complex instructions, such as those in semi-skilled work, can relate to co-workers and supervisors on a superficial work-related basis, and can have only occasional public interaction.

(TR. 21). With this RFC, the ALJ concluded that Plaintiff was not capable of performing her past relevant work and proceeded to step five. (TR. 29).

2

At step five, the ALJ presented several limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 53). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles (DOT). (TR. 53). The ALJ adopted the testimony of the VE and concluded that Ms. Legan was not disabled based on her ability to perform the identified jobs. (TR. 30-31).

## III. ISSUES PRESENTED

On appeal, Plaintiff alleges a lack of substantial evidence to support the mental and physical RFC.

## IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V. MENTAL RFC

At step four, the ALJ stated that Ms. Legan had the mental RFC to "understand, remember and carry out simple and some complex instructions, such as those in semi-skilled work, [could] relate to co-workers and supervisors on a superficial work-related

3

basis, and [could] have only occasional public interaction." (TR. 21). The ALJ based this finding on opinions from two state agency psychologists, Dr. Stephen Scott and Dr. Mary Rolison, whom he accorded "great weight." (TR. 28). Drs. Scott and Rolison reviewed Plaintiff's file at the initial and reconsideration levels of her application for benefits on July 17, 2014 and October 22, 2014, respectively. (TR. 61-62, 65-66, 74-76, 79-81). Together, the psychologists found that Ms. Legan could:

- understand, remember, and carry out simple and some complex instructions with routine supervision,
- relate to supervisors and co-workers on a superficial work basis,
- adapt to a work environment, and
- occasionally interact with the general public.

(TR. 66, 81).

Plaintiff contends that the mental RFC lacks substantial evidence because the ALJ: (1) improperly favored the opinions of the state agency psychologists over the opinion of Plaintiff's treating psychiatrist, Dr. Sabahat Faheem and (2) failed to properly evaluate Dr. Faheem's opinion. The Court agrees.

### A.   ALJ's Duty to Assess a Treating Physician's Opinion

An ALJ must follow a particular analysis in evaluating a treating physician's opinion. First, the ALJ has to determine, then explain, whether the opinion is entitled to controlling weight. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). An opinion is entitled to controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." *Allman v. Colvin*, 813 F.3d 1326, 1331 (10th Cir. 2016) (citation and internal quotation

marks omitted). "But if the ALJ decides that the treating physician's opinion is not entitled to controlling weight, the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight." *Id.* (internal quotation marks omitted).

In doing so, the ALJ must assess the opinion under a series of factors which include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.* at 1331-1332 (internal quotation marks omitted); *Krausner v. Astrue,* 638 F.3d 1324, 1330 (10th Cir. 2011); 20 C.F.R § 404.1527.

Ultimately, an ALJ "must give good reasons for the weight assigned to a treating physician's opinion," and "[t]he reasons must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reason for that weight." *Allman*, 813 F.3d at 1332. If the ALJ rejects an opinion completely, he must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted).

Additionally, "[w]hen a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around." *Goatcher v. United States Dep't of Health & Human Servs.,* 52 F.3d 288, 290 (10th Cir. 1995) (quotation omitted). "The treating physician's opinion is given particular weight because of his

unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Doyal v. Barnhart,* 331 F.3d 758, 762 (10th Cir. 2003) (quotation omitted).

### B. Dr. Faheem's Opinions

The record contains treatment notes from Dr. Faheem from June 13, 2013 through August 17, 2015. (TR. 372-378, 380-387, 487-492, 503-514). In addition to treatment notes, Dr. Faheem issued three "medical opinions"[1] which the ALJ was required to evaluate, utilizing the proper legal framework outlined above. *See supra*.

On April 3, 2014, the ALJ completed a "Treating Physician Mental Functional Assessment Questionnaire" which stated that Ms. Legan suffered from schizoaffective disorder, generalized anxiety disorder, and panic disorder without agoraphobia. (TR. 368). According to Dr. Faheem, these conditions caused Plaintiff to suffer auditory hallucinations, depression, panic attacks, and anxiety, which were severe enough to "interfer[e] and affect[ ] [her] functioning." (TR. 368). On November 20, 2014, Dr. Faheem stated that Plaintiff's diagnoses caused "mood problems and psychosis" and that "[s]he is on medication and she cannot concentrate or focus well on duties assigned to her." (TR. 509). Finally, on March 6, 2015, the ALJ completed a "Mental Capacity

---

[1] "Medical opinions" are defined as "statement from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).

Assessment Form" where he stated that Plaintiff's diagnoses caused her to be "markedly" limited in her abilities to:

- carry out very short and simple instructions,
- carry out detailed instructions,
- maintain attention and concentration for extended periods,
- perform activities within a schedule, maintain regular attendance, and be punctual within customary limits,
- sustain an ordinary routine without special supervision,
- work in coordination with or in proximity to others without being distracted by them,
- make simple work-related decisions,
- complete a normal workday or workweek without interruptions from psychologically based symptoms,
- perform at a consistent pace with a one-hour lunch break and two 15-minute rest periods,
- interact appropriately with the general public,
- ask simple questions or request assistance,
- accept instructions and respond appropriately to criticism from supervisors,
- Get along with coworkers or peers without distracting them or exhibiting behavioral extremes,
- Maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness,
- Respond appropriately to changes in the work setting, be aware of normal hazards and take appropriate precautions,
- Travel in unfamiliar places or use public transportation, and
- Set realistic goals or make plans.

(TR. 513). Dr. Faheem stated that this opinion was based on his treatment and direct observation of Plaintiff, as well as his experience and background, and information gleaned from psychiatric evaluations, Ms. Legan's reports, and therapy records. (TR. 514).

## C. Error in the Evaluation of Dr. Faheem's Opinions

As stated, the ALJ was required to evaluate Dr. Faheem's opinions, first determining whether they were entitled to "controlling weight" and then evaluating them under a series of factors and providing good reasons for his conclusions. *See supra*. Ms. Legan argues that the ALJ erred first by failing to make a determination regarding whether Dr. Faheem's opinions were entitled to "controlling weight." (ECF No. 12:7-8). But the Tenth Circuit Court of Appeals has indicated that no error exists based on the ALJ's failure to explicitly discuss whether an opinion is entitled to controlling weight, when it is apparent from the record that the ALJ had given the opinion less than controlling weight, and continued through the remainder of the analysis. *See Andersen v. Astrue*, 319 F. App'x 712, 720, n. 4, 721 (10th Cir. 2009).

Next, Plaintiff contends the ALJ: (1) improperly favored the opinions of Drs. Scott and Rolison over Dr. Faheem and (2) the ALJ failed to properly evaluate Dr. Faheem's opinion. Plaintiff's arguments have merit.

First, as stated, "[w]hen a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around." *Goatcher,* 52 F.3d at 290. Here, the opinions from Drs. Scott and Rolison were based on treatment notes

8

from Dr. Faheem dated November 19, 2013, January 9, 2014, and April 3, 2014. (TR. 62, 75-76). From these office notes, the agency physicians cited "good mood," "normal activities," no psychosis, logical and well-organized thoughts, and "no voices, hallucinations, or delusions since starting Seroquel." (TR. 62, 75-76). However, neither Dr. Rolison nor Dr. Scott considered Dr. Faheem's progress notes beyond April 3, 2014 nor *any* of Dr. Faheem's medical opinions which outlined Plaintiff's specific work-related limitations. Accordingly, the Court concludes that ALJ erred in concluding that the agency physicians' opinions outweighed the opinions of Dr. Faheem.

Second, the ALJ failed to evaluate Dr. Faheem's opinions utilizing the regulatory factors or provide legitimate reasons to discount the opinions. Although the ALJ recognized Dr. Faheem as Plaintiff's treating psychiatrist, the ALJ omitted any discussion of the April 3, 2014 and November 20, 2014 opinions and certainly did not apply the regulatory factors. And regarding the March 6, 2014 opinion, the ALJ gave it "little weight" because:

- Dr. Faheem had assessed Ms. Legan with a Global Assessment of Functioning (GAF) rating of "50-55" which, the ALJ stated represented "only moderate symptoms" of impairment, rather than "marked" and

- during an August 15, 2015 visit, Ms. Legan had reported a "fair response" to medications and that she was sad and depressed with off and on hallucinations and, which the ALJ believed was not consistent with "marked" limitations.

(TR. 29). Neither reason is legitimate.

First, according to the Diagnostic and Statistical Manual of Mental Disorders, a GAF of 41–50 indicates "serious" symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), OR any serious impairment in social, occupational, or school

9

functioning" and a GAF of 51-60 indicates "moderate" symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning. *Diagnostic and Statistical Manual of Mental Disorders* (DSM–IV–TR) (4th ed., text revision, American Psychiatric Association 2000 at 34).

In his treatment notes, Dr. Faheem did not indicate whether Plaintiff's GAF was 50 or 51-55. (TR. 372-378, 380-387, 487-492, 503-514). In any event, Dr. Faheem had concluded that Plaintiff's GAF of "50-55" had resulted in "marked" limitations in 17 work-related areas. (TR. 512-513). Although the ALJ discounted Dr. Faheem's opinion by reaching an opposite conclusion, i.e., that the GAF of 50-55 resulted in only "moderate" limitations, she was not qualified to draw this conclusion. *See Lax v. Astrue,* 489 F.3d 1080, 1089 (10th Cir. 2007). ("[A]n ALJ cannot substitute her lay opinion for that of a medical professional."). If the ALJ was not confident that Dr. Faheem's assessment of "marked" limitations was consistent with the GAF score of 50–55, the ALJ should have either contacted Dr. Faheem for clarification or sought an expert opinion. *McGoffin v. Barnhart,* 288 F.3d 1248, 1252 (10th Cir. 2002) (holding ALJ had an obligation to re-contact treating physician if validity of his report was in question).[2]

Second, the ALJ rejected Dr. Faheem's opinion in light of treatment notes from an August 17, 2015 visit which stated that Ms. Legan had reported being sad and depressed

---

[2] Additionally, because a GAF of 50 indicates "serious" symptoms, the possibility exists that Dr. Faheem had concluded that Plaintiff's GAF was 50, rather than 55. Under such circumstances, the Court would likewise find error. *See Blake v. Astrue*, No. 07-1207 MLB, 2008 WL 2224847, at *5 (D. Kan. May 27, 2008) (ALJ improperly rejected the opinion from Plaintiff's treating psychiatrist who had assigned Plaintiff a GAF of 50 by stating that the psychiatrist's "marked" findings were inconsistent with a GAF of 50, which the ALJ stated represented only "moderate" findings). But the Court cannot reach this conclusion in the absence of clarification from Dr. Faheem regarding Plaintiff's actual GAF rating.

with off and on hallucinations and responding "fair[ly]" to medications. According to the ALJ, these findings were "not consistent with the marked limitations in [Dr. Faheem's] Mental Capacity Assessment." (TR. 29). But again, the ALJ was not entitled to substitute her opinion for that of Dr. Faheem, who *had* believed that Plaintiff's symptoms resulted in the various "marked" limitations. *See* TR. 512-514.

In sum, the ALJ erred in: (1) crediting the state agency opinions over opinions from Dr. Faheem, (2) failing to even mention two of Dr. Faheem's opinions and weigh them utilizing the regulatory factors, and (3) failing to provide legitimate reasons to discount Dr. Faheem's March 6, 2014 opinion. These errors warrant reversal.

## VI. PHYSICAL RFC

At step four, the ALJ stated that Ms. Legan had the physical RFC to: lift, carry, push or pull 20 pounds occasionally and 10 pounds frequently; and sit, stand, and walk 6 hours during an 8-hour workday. (TR. 21). The ALJ based this finding on opinions from two state agency physicians, Dr. William Oehlert and Dr. Sarah Yoakum, whom he accorded "great weight." (TR. 28). Drs. Oehlert and Yoakum reviewed Plaintiff's file at the initial and reconsideration levels of her application for benefits on July 17, 2014 and October 24, 2014, respectively. (TR. 61-62, 65-66, 74-76, 79-81). Together, the psychologists found the physical limitations as outlined in the RFC. *See* TR. 63-64, 77-78. Plaintiff contends that the physical RFC lacks substantial evidence because: (1) it failed to include limitations related to her ability to bend, kneel, stoop, crouch, and crawl, handle, and finger and (2) the RFC did not account for Plaintiff's fatigue or sleepiness. (ECF No. 12:9-11). Neither argument has merit.

First, Plaintiff argues that findings from Dr. Thomas Ratino supported an inclusion in the RFC regarding limitations on Plaintiff's abilities to bend, kneel, stoop, crouch, and crawl. As noted by Plaintiff, Dr. Ratino documented that Ms. Legan suffered from limited range of motion and pain in her lumbar spine which was aggravated by changing positions, activities of daily living, and walking. *See* TR. 545, 559, 564, 567, 569; ECF No. 12:10. But Dr. Ratino never stated that this pain or reduced range of motion had limited Plaintiff beyond the findings in the ALJ's physical RFC, nor did Dr. Ratino assess specific limitations related to Ms. Legan's abilities to bend, kneel, stoop, crouch, and crawl.

Regarding limitations on her ability to finger and handle, Plaintiff cites evidence from Dr. Susan Hull who diagnosed Plaintiff with "Dystonic Tremor" which presented as Plaintiff having "tremulous hands." *See* TR. 465, 518. But Dr. Hull did not assess any functional limitations resulting from the condition which would affect Plaintiff's ability to handle or finger.

Because neither Dr. Ratino nor Dr. Hull had assessed specific limitations regarding Plaintiff's abilities to bend, kneel, stoop, crouch, and crawl, handle, and finger, the ALJ was under no duty to find specific limitations in the RFC. *See McNally v. Astrue*, 241 F. App'x 515, 518 (10th Cir. 2007) ("with regard to [her severe impairments], the claimant has shown no error by the ALJ because she does not identify any functional limitations that should have been included in the RFC assessment or discuss any evidence that would support the inclusion of any limitations") (citation omitted).

Second, Plaintiff argues that "[t]he ALJ also did not factor into the RFC Plaintiff's fatigue and/or sleepiness, which reasonably would interfere with her ability to consistently perform a job eight hours a day, five days a week." (ECF No. 12:11). But Plaintiff cites

12

no evidence that she suffered from a level of fatigue or sleepiness which would prevent her ability to work, and the Court will not comb the record for evidentiary support. *See Kirkpatrick v. Colvin*, 663 F. App'x. at 649 (noting that "it isn't [the Court's] obligation to search the record and construct a party's arguments.").

In sum, Plaintiff cited no evidence: (1) that supported a more restrictive physical RFC—specifically, to include limitations in Plaintiff's abilities to bend, kneel, stoop, crouch, and crawl, handle, and finger and (2) which related to a disabling level of sleepiness or fatigue. The physical RFC was supported by the opinions from Drs. Oehlert and Yoakum, which the ALJ accorded "great weight." (TR. 28). These opinions constitute substantial evidence to support the RFC and the Court rejects Ms. Legan's challenge to the physical RFC.

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision for further administrative development.

ENTERED on November 30, 2017.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE